# EXHIBIT 1

**IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA**

| | |
|---|---|
| WILLIAM ROBB BARTHOLOMEW, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ENERGY CORPORATION OF AMERICA, GREYLOCK ENERGY<br><br>Defendants. | CIVIL DIVISION<br><br>Docket A.D. No.<br><br>**PETITION TO MODIFY OR CORRECT THE ARBITRATION IN FAVOR OF THE PLAINTIFF AND PROCEED TO THE DAMAGES PHASE OF THE LITIGATION, OR IN THE ALTERNATIVE TO VACATE THE ARBITRATION AWARD**<br><br>WILLIAM ROBB BARTHOLOMEW, an individual.<br><br>**JURY TRIAL DEMANDED**<br><br>Code<br><br>Counsel of Record<br>James J. Walsh<br>445 Fort Pitt. BLVD., Suite 100<br>Pittsburgh, PA  15219<br>PA I.D.  # 207173<br><br>(412) 719-9673 |

**IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA**

| | |
|---|---|
| WILLIAM ROBB BARTHOLOMEW, an individual, | CIVIL DIVISION |
| Plaintiff, | Docket A.D. No. |
| v. | |
| ENERGY CORPORATION OF AMERICA, GREYLOCK ENERGY | |
| Defendant. | |

## NOTICE

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally of by attorney and filing in writing with the court your defense or objections to the claims set forth against you. You are warned if you fail to do so, the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE OR KNOW A LAWYER, THEN YOU SHOULD GO TO OR PHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

**LAWYER REFERRAL SERVICE
THE GREENE COUNTY BAR ASSOCIATION
10 EAST HIGH STREET
WAYNESBURG PA 15370
TELEPHONE (724) 852-5237**

_____
Attorney for Plaintiffs

**IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA**

| | |
|---|---|
| WILLIAM ROBB BARTHOLOMEW, an individual, | CIVIL DIVISION |
| Plaintiff, | Docket A.D. No. |
| v. | |
| ENERGY CORPORATION OF AMERICA, GREYLOCK ENERGY | |
| Defendant. | |

### PETITION TO MODIFY OR CORRECT THE ARBITRATION AWARD IN FAVOR OF THE PLAINTIFF AND TO PROCEED TO THE DAMAGES PHASE OF LITIGATION OR IN THE ALTERNATIVE TO VACATE THE ARBIRTATION AWARD

AND NOW, comes Plaintiff, by and through his attorney, James J. Walsh, Esquire, and files this Petition to Modify The Arbitration Award in Favor of the Plaintiff, and proceed to the damages phase of litigation, or in the Alternative to Vacate the Arbitration Award, and avers the following:

### BACKGROUND AND PROCEDURAL HISTORY

1) William Robb Bartholomew is an adult individual who currently resides in Greene County Pennsylvania.

2) Energy Corporation of America (hereafter ECA) is a West Virginia corporation.

3) Greylock Energy is the successor in interest to ECA on Mr. Bartholomew's lease and is a domestic foreign corporation.

4) The amount in dispute in this case, exclusive of interest demanded, is over Five Hundred Thousand Dollars ($500,000).

5) On or about June 28, 2001, plaintiff signed an oil and gas lease with Jesmar Energy Inc.

6) The June 2001 lease was prepared exclusively by Jesmar Energy, Inc., and Mr. Bartholomew was not permitted to make any changes to the lease as it was presented to him, it was a "take it or leave it" lease offer from Jesmar.

7) On or about the 13th day of June 2005, Jesmar assigned Mr. Bartholomew's lease to Eastern American Energy Corporation.

8) Prior to the expiration of the June 2001 lease, a natural gas well was drilled on Mr. Bartholomew's property.[1]

9) On or about the 1st day of January 2010, Eastern American Energy Corporation of America merged with Energy Corporation of America (hereafter ECA).

10)     The company continued doing business as ECA and handled all operations involving Mr. Bartholomew's wells until on or about the 30th day of November 2017.

---

[1] After the well was drilled Mr. Bartholomew was held by production by the terms of the oil and gas lease, and thus the lease was extended as long as oil and/or gas was produced on his property.

11) On or about the 30th day of November 2017, Mr. Bartholomew's June 2001 lease was sold to Greylock Energy.

12) The June 28, 2001 lease contains the following arbitration clause:

"ARBITRATION In the event of a disagreement between Lessor and Lessee concerning this lease, performance thereunder, or damages caused by Lessee's operations settlement shall be determined by a panel of three disinterested arbiters. Lessor and Lessee shall appoint and pay the fee of one each, and the two so appointed shall appoint the third, whose fee shall be borne equally by Lessor and Lessee. **The award shall be by unanimous decision** of the arbitrators and shall be final." (emphasis added)

13) Upon production of natural gas on Mr. Bartholomew's property royalty payments were to become due to Mr. Bartholomew.

14) The royalty language for natural gas is as follows:

(B) ROYALTY: To pay to Lessor as Royalty, less all taxes, assessments, and adjustments, and adjustments on production from the Leasehold, as follows:
2. GAS: To pay Lessor an amount equal to one-eighth of the **revenue realized by Lessee** for all gas and the constituents thereof produced and marketed from the Leasehold during the proceeding month. Lessee may withhold Royalty payment until such time as the total withheld exceeds fifty dollars ($50.00). (emphasis added).

15) At all times under this lease respondents have performed all operations for the natural gas produced on Mr. Bartholomew's property.

16) Initially respondents sent Mr. Bartholomew documentation of his royalty payments, however, respondents did not include any

documentation that post-production costs were being removed from Mr. Bartholomew's royalty payments.

17) Mr. Bartholomew believed he was being paid one-eighth of the revenue realized, not one-eighth of the profit obtained by respondents following the removal of post-production costs.

18) At some point in time in 2014 respondents began sending Mr. Bartholomew royalty statements showing that post-production costs were being removed from Mr. Bartholomew's royalty payments and that he was only being paid one-eighth of the profit, not one-eighth of the revenue realized as required by the lease.

19) Upon learning that he was receiving only one-eighth of profit, and not one-eighth of the revenue realized, Mr. Bartholomew contacted undersigned counsel about his lease.

20) Undersigned counsel, Mr. Bartholomew, and representatives from ECA met at Mr. Bartholomew's residence to discuss several issues, including the issue relating to this litigation, representatives of ECA stated that operation began on Mr. Bartholomew's property under the June 2001 lease.

21) Representatives from ECA also stated that they would continue to only pay one-eighth of the profit to Mr. Bartholomew, not one-eighth of the revenue realized.

22) Following the meeting undersigned counsel and prior co-counsel attempted to have ECA begin the arbitration process.

23) ECA informed prior co-counsel that they would not discuss the matter, and that a writ would have to be filed.

24) A writ was filed in The Court of Common Pleas of Greene County in December of 2015.

25) ECA refused to provide the name and address of where they should be served in Pennsylvania, and the writ was renewed until finally proper service was obtained.

26) Following service being obtained ECA still dragged their feet, requiring undersigned counsel to make several trips to Greene County to keep the case open.

27) Ultimately, undersigned counsel was required file a complaint (at the Court's request), in Greene County Court of Common Pleas

28) The arbitration proceeding was finally started in 2018.

29) Following a phone conversation the week of February 19, 2018, it was decided that both sides should designate their arbiter on or before February 26, 2018.

30) Undersigned counsel informed respondents of the lawyer he chose as his arbiter on February 26, 2018.

31) On February 26, 2018 respondent ECA informed undersigned counsel that they had been unable to choose their arbiter by that day.

32) Undersigned counsel sent an email to ECA on February 28, 2018 stating that ECA needed to choose their arbiter as this case had been ongoing without ECA even selecting their arbiter since December of 2015.

33) ECA informed undersigned counsel that they would choose their arbiter by March 6, 2018.

34) On March 6, 2018 ECA informed undersigned counsel that they still had not chosen their arbiter.

35) On March 7, 2018 ECA finally chose their arbiter.

36) After ECA finally chose their arbiter, the arbitration proceedings began.

37) The arbiters in this case decided, *sua sponte*, to bifurcate the arbitration into a liability phase, followed by a damages phase if defendants were found liable.

38) After the issuance of the imperfect award for liability no evidence of damages was introduced or requested by the arbiters.

39) During the arbitration process both sides agreed that the issue in this case is purely a matter of law, and that witnesses were not required in this case.

40) Due to the above listed stipulation, both sides were to file dispositive motions to the arbiters, and both sides were then to reply to the dispositive motions[2].

41) Following the submission of the dispositive motions and responses, the arbiters, *sua sponte*, asked for oral argument on the arbitration.

42) Oral argument occurred on December 10, 2019.

43) On January 31, 2020, the arbiters issued their award, the award was not unanimous, and thus imperfect in form.

44) The Arbitration clause in the lease states that the award must be unanimous.

### **THIS HONORABLE COURT SHOULD MODIFY OR CORRECT THIS AWARD, DUE TO IT NOT BEING UNANAMOUS, WHICH CAUSES THE AWARD TO BE IMPERFECT IN FORM, YET NOT DECIDING THE CASE ON THE MERITS AND PROCEED TO THE DAMAGES PHASE OF LITIGATION**

45) Paragraphs 1 – 44 are incorporated here by reference.

46) The lease in this case contains an arbitration clause that states that the decision of the arbiters must be unanimous.

47) "Arbitration, while not surrounded by the technical procedural safeguards incident to litigation, is not a wholly informal process and requires for its validity the observance of certain minimum standards

---

[2] All filings from all parties to this action are attacked to this petition

indispensable to the securing of a fair and impartial disposition of the merits of a controversy." Scholler Bros. v. Otto A.C. Hagen Corp., 44 A.2d 321, 322 (1945).

48) "These minimum standards require that both parties are provided with notice, all the arbitrators must sit at the hearing, each side is entitled to be heard and to be present when the other party's evidence is being given and, unless the submission allows a decision by a majority of the arbitrators, all must join in the award." Id. See also Allstate Ins. Co. v. Fioravanti, 299 A.2d 585, 588 (1973).[3]

49) "Once a dispute has been submitted to arbitration, the parties are entitled to a hearing with "the necessary essentials of due process, i.e., notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause." Id.

50) "Arbitrations are not wholly informal proceedings and the basic principles of hearing conduct must be adhered to, with the arbitration process requiring for its validity the observance of certain minimum standards indispensable to the securing of a fair and impartial disposition of the merits of a controversy" Reisman v. Ranoel Realty Co., 303 A.2d 511, 514 (1973).

---

[3] Undersigned Counsel is aware that the failure to hear witness testimony is part of the minimum standards for an arbitration, however as both sides stipulated that this was a matter of law, and that neither side asked to call any witnesses, this issue is waived for purposes of this petition and will not be raised as an issue regarding a modification of the award, nor as an issue to vacate the award.

51)     From existing case law in the Commonwealth, it is clear that the minimum requirements for a fair arbitration have not been met.

52)     The Federal Arbitration Act (hereafter FAA) states in relevant part

> §11. Same; modification or correction; grounds; order
>
> In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

53)     The FAA applies to any agreement affecting interstate commerce, affording the broadest exercise of Congress's power allowed under the Commerce Clause to the FAA. Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, (1995) Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037, (2003); Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, (1984).

54)     Therefore, the FAA will be applied both in the federal and state arena for purposes of determining the enforceability of an arbitration agreement that might otherwise be invalid under state law. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, (1983).

55) State rules governing the "conduct of arbitration" will not run afoul of the FAA even when the FAA does not contain a procedural provision that is coextensive with an applicable state procedural rule. Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, (1984).

56) In this case, both the contract itself, and the case law of The Commonwealth require the arbitration award to be unanimous (i.e. to be joined by all the arbiters).

57) The January 31, 2019 arbitration award was not unanimous and therefore runs afoul of PA Case law, and the Lease Contract in this case.

58) Due to the lack of unanimity in the award, the award is imperfect in form.

59) The imperfection in the form of the award (lack of unanimity) does not affect the merits of the controversy due to no final unanimous decision being made on the merits of the controversy.

60) As the award is imperfect in form and does not affect the merits of the controversy, the award may be modified or corrected in favor of the plaintiff under §11 of the FAA.

61) A copy of all filings in this case, from plaintiff and defendants is attached to this petition.

62) In addition to the above referenced reasons as to why this award must be modified, Congress was aware of the potential of arbitration

to provide against the costliness and delay of litigation when it enacted the FAA.

63) The United States Supreme Court stated:

> This is not to say that Congress was blind to the potential benefit of the legislation for expedited resolution of disputes. Far from it, the House Report expressly observed:
>
> "It is practically appropriate that the action should be taken at this time when there is so much agitation against the costliness and delays of litigation. These matters can be largely eliminated by agreements for arbitration, if arbitration agreements are made valid and enforceable." H. R. Rep. No. 96, 68th Cong., 1st Sess., 2 (1924)

64) In this specific case, the benefit of avoiding the costliness and delays of litigation was not met, as the arbitrators issued an award that was imperfect in form by issuing an award that was not unanimous.

65) Due to the award being imperfect in form, the benefits listed by Congress to the FAA cannot be met as protracted, costly litigation must follow this imperfect award, with no guarantee of the next award not being imperfect due to each side being able to choose their own arbiter.

66) As the arbitration award was imperfect in a matter of form not affecting the merits of the controversy, This Honorable Court should modify the award in favor of the Plaintiff in regards to liability, and move on to the damages phase of the litigation.

67) Further, this award should also be modified due to the benefits listed by Congress in the legislative history of the act not being met in this case.

**IF THIS HONORABLE COURT DOES NOT MODIFY OR CORRECT THE ARBITRATION AWARD, AS THE PLAINTIFF BELIEVES IT SHOULD, THEN THIS HONORABLE COURT MUST VACATE THE ARBITRATION AWARD DUE TO THE AWARD NOT BEING UNANAMOUS AS REQUIRED BY THE CASE LAW OF THE COMMONWEALTH, AND THE WRITTEN LANGAUGE OF THE LEASE**

68) Paragraphs 1 - 67 are incorporated in this section by reference

69) The June 28, 2001 lease contains the following arbitration clause:

"ARBITRATION In the event of a disagreement between Lessor and Lessee concerning this lease, performance thereunder, or damages caused by Lessee's operations settlement shall be determined by a panel of three disinterested arbiters. Lessor and Lessee shall appoint and pay the fee of one each, and the two so appointed shall appoint the third, whose fee shall be borne equally by Lessor and Lessee. **The award shall be by unanimous decision** of the arbitrators and shall be final." (emphasis added)

70) As the plain text of the lease requires a unanimous decision, and the arbiters failed to come to a unanimous decision, if This Honorable Court does not modify the arbitration award, as plaintiff believes it should, then This Honorable Court must vacate the award as being imperfect in form due to it not being a unanimous decision of the arbiters.

71) "Arbitration, while not surrounded by the technical procedural safeguards incident to litigation, is not a wholly informal process and

requires for its validity the observance of certain minimum standards indispensable to the securing of a fair and impartial disposition of the merits of a controversy." Scholler Bros. v. Otto A.C. Hagen Corp., 44 A.2d 321, 322 (1945).

72) "These minimum standards require that both parties are provided with notice, all the arbitrators must sit at the hearing, each side is entitled to be heard and to be present when the other party's evidence is being given and, **unless the submission allows a decision by a majority of the arbitrators, all must join in the award**." Id. See also Allstate Ins. Co. v. Fioravanti, 299 A.2d 585, 588 (1973) (emphasis added).

73) As Our Supreme Court has stated that an arbitration award must be unanimous, unless the language of the arbitration allows a decision by a majority, if This Honorable Court does not modify the arbitration award in favor of the plaintiff, it must vacate the arbitration award.

WHEREFORE, Plaintiff respectfully demands:

A. That This Honorable Court modify or correct the arbitration award on liability in favor of the plaintiff;

B. Upon modifying the arbitration award in favor of the plaintiff that This Honorable Court begin proceedings on damages;

C. Or, in the alternative, if This Honorable Court does not modify or correct the arbitration award in favor of the Plaintiff then it must vacate the arbitration award;

D. Any other relief that This Honorable deems appropriate.

                                        Respectfully Submitted,

                                        _____

                                        James J. Walsh, Esquire
                                        445 Fort Pitt BLVD., Suite 100
                                        Pittsburgh, PA  15219
                                        Attorney for Plaintiff

**IN THE COURT OF COMMON PLEAS OF GREENE COUNTY, PENNSYLVANIA**

| | |
|---|---|
| WILLIAM ROBB BARTHOLOMEW, an individual, | CIVIL DIVISION |
| Plaintiff, | Docket A.D. No. |
| v. | |
| ENERGY CORPORATION OF AMERICA, Greylock Energy | |
| Defendant. | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the person(s) by email on the 2nd day of March 2020.

Justin Werner
Reed Smith
Via email jwerner@reedsmith.com
Attorney Werner informed undersigned counsel via email that he is permitted to accept service of this Petition via email through an email to undersigned counsel

_____
James J. Walsh, Esquire
445 Fort Pitt BLVD., Suite 100
Pittsburgh, PA  15219
Attorney for Plaintiff